Catherine C. KYSLINGER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 73–611.

United States District Court, W. D. Pennsylvania.

Dec. 22, 1975.

---

Howard F. Messer, Pittsburgh, Pa., for plaintiff.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge.

This proceeding is filed pursuant to the Federal Tort Claims Act, 28 U.S.C., § 1346(b)[1] against the United States based on a claim of medical mistreatment, supervision, and care of Victor W. Kyslinger, plaintiff's husband, who died on July 24, 1972. The Court has conducted a full and complete trial and has considered the arguments of counsel and must conclude that plaintiff is entitled to no relief.

The facts may briefly be stated. Plaintiff's decedent, Victor W. Kyslinger, was diagnosed in 1961 to have polycystic kidney disease which is a congenital form of kidney abnormality that causes progressively enlarging cysts within the kidneys. As a result this disease causes the kidneys to increase six to ten times their normal size and progressive renal insufficiency results so that a fatal uremia may occur before age 55.[2] At all times relevant hereto, the defendant, through the Veteran's Administration, operated the Oakland Veteran's Administration Hospital in Pittsburgh, which was the place where the decedent was being treated. In March, 1971, plaintiff's decedent, during one of his many hospitalizations to undergo peritoneal dialysis, was diagnosed as having a 4% residual kidney function as well as being in the "end stage" process of the disease.[3]

On June 18, 1971, Victor W. Kyslinger, the decedent, began his hemodialysis treatment. He underwent this treatment on the unit provided at the hospital until April 28, 1972, a period of ten months. Finally, in May of 1972, the defendant provided decedent with a hemodialysis unit for his home after being completely satisfied that the plaintiff and decedent were capable of continuing this treatment without hospital supervision. On July 24, 1974, Victor W. Kyslinger died. The autopsy confirmed the existence of severe polycystic disease of both kidneys and ascribed renal failure as the probable cause of death.

■ The plaintiff contends that the defendant failed to adequately inform, train, or instruct her or the decedent on the proper use and maintenance of a home hemodialysis unit. The record, however, reveals the contrary. During those ten months that the plaintiff's decedent underwent biweekly hemodialysis treatment on the unit provided at the hospital, both plaintiff and decedent were instructed as to the operation, maintenance, and supervision of said treatment. The Court can find no basis to conclude that there was any course of conduct on the part of the defendant or any of its personnel which would support the finding of any liability or any evidence which would lead the Court to conclude that the plaintiff or plaintiff's decedent were not properly informed on the use of the hemodialysis unit.

■ The plaintiff also contends that the hemodialysis unit provided by the defendant was nonfunctional. More specifically, plaintiff alleges that the unit did

---

1. 28 U.S.C., § 1346(b) provides: "Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. Plaintiff's husband died at age 52.

3. "End stage" is a term used by medical experts to indicate that the kidney has failed to a point where it is no longer likely to sustain the life of the individual.

not perform its desired function of de-ionizing the water, nor did the warning system on the unit activate on the unit's failure. Each of these allegations are without merit. Although plaintiff's expert testified that the water taken from the decedent's unit was very acidic (high concentration of ionized water), the record reveals that the method of collection and storage of the water made a thorough and accurate testing almost impossible and, in the Court's opinion, contributed to the contamination of said water. Plaintiff's expert testified that he never saw the unit from which the water was taken and that his tests did not take place until approximately one month after the death of Mr. Kyslinger. The record further reveals that during this one month interim, the tested water remained inside the hemodialysis unit for approximately one week following Mr. Kyslinger's death. Plaintiff transferred this water from the unit into jars, which she had previously used for storing drinking water, and placed them in her refrigerator. The Court is firmly convinced, that under these circumstances, the water tested by plaintiff's expert was highly contaminated and, therefore, did not represent a true sampling of the water which was in the unit at Mr. Kyslinger's death.

In view of the foregoing, the Court is satisfied that the defendant adequately prepared and trained plaintiff and decedent in the operation and use of the hemodialysis unit and that said unit was operational at the time of Mr. Kyslinger's death.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

## ORDER

And now, this 22 day of December, 1975, judgment is hereby entered in behalf of the defendant, United States of America, and against the plaintiff, Catherine C. Kyslinger.